UNITED STATES of America, Appellee,

v.

Eugenio GOOD SHIELD, a/k/a Joe Good Shield, Appellant.

UNITED STATES of America, Appellee,

v.

Paul Cordell GOOD SHIELD, Appellant.

Nos. 76–1570, 76–1622.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1976.

Decided Nov. 10, 1976.

Bradley G. Bonynge, Wessington Springs, S.D., for Eugenio Good Shield.

John S. Lovald, Pierre, S.D., for Paul C. Good Shield.

R. D. Hurd, Asst. U. S. Atty., Sioux Falls, S.D., for appellee; William F. Clayton, U. S. Atty., Sioux Falls, S.D., on the briefs.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

These are separate appeals arising from convictions of two brothers, Eugenio (Joe) Good Shield and Cordell (Paul) Good Shield, for assault with a dangerous weapon, in violation of 18 U.S.C. § 1153, and S.D.C.L. § 22–18–11, and for endeavoring to influence, obstruct and impede justice, in violation of 18 U.S.C. § 1503.[1] We consolidated the appeals for purposes of argument and opinion. On appeal the defendants challenge the sufficiency of evidence to sustain their convictions. We affirm.

---

1. Both defendants were also convicted under a separate count (Count II) for unlawfully breaking and entering, in the nighttime, a dwelling house "with intent to commit some crime therein," allegedly in violation of 18 U.S.C. § 1153, and S.D.C.L. § 22–32–1(1). On this count they were given suspended sentences and placed on probation for five years to commence after their serving the one and one-half years concurrent sentences given on the other two counts. The government does not contest, on appeal, that the convictions under Count II must be vacated since the indictment failed to designate the specific crime which they intended to commit in connection with the breaking and entering. *See United States v. Thomas,* 144 U.S.App.D.C. 44, 444 F.2d 919 (1971); and *United States v. Seegers,* 144 U.S.App.D.C. 162, 445 F.2d 232 (1971).

*Factual Background.*

Henry Good Shield, a brother of the defendants, was convicted of the murder of Steven Wright in November of 1974. Jewel McCaig, the only witness to Wright's death, was the principal prosecution witness at Henry's trial. Henry's defense was that Jewel, not he, had committed the murder. Jewel admitted, on the witness stand, to having made prior statements to the FBI and to the Good Shields' mother that she had killed Wright, but she testified at trial that Henry was the murderer. Subsequently, in the spring of 1975, Jewel wrote a three page statement confessing that she had committed the murder. That confession led to the granting of a hearing on Henry's habeas corpus petition. The hearing was scheduled for December of 1975.

The incidents leading to the present case occurred on or about November 23, 1975. According to Jewel's testimony, the defendants came to her home in the early morning hours, broke down the door, and entered her bedroom. She testified that Joe Good Shield placed a hanger around her neck and made threatening remarks. Eventually Jewel left with the defendants because, according to her testimony, there was no one to help her and she was afraid. They drove to a nearby creek and Jewel attempted to run away. Joe stopped her and threw her to the ground. Paul stabbed her in the left hand. They then drove to the Stanley Good Shield house where the defendants ordered her to "write the truth," and stated that "they wanted their brother out." Subsequently Paul struck her, pushed her against a stove causing a scarring of her head, and stabbed her in the back. Eventually they released her, and she returned home.

*Count I.*

■ Joe Good Shield claims that the evidence against him as to Count I is insufficient because he did not stab or strike Jewel. We cannot accept this claim. Aiders and abettors and those causing an act to be done are punishable as principals. *Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954); 18 U.S.C. § 2. The indictment may charge a defendant as a principal, and need not specifically allege that he aided and abetted in the commission of the crime. *United States v. Matousek,* 483 F.2d 286 (8th Cir. 1973). All that is necessary is that Joe in some way associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his actions to make it succeed. *See, e. g., Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). The evidence, viewed in the light most favorable to the government, clearly indicates that Joe was present when Jewel was stabbed and that he associated himself with the incident.

Paul Good Shield also challenges the sufficiency of the evidence as to his conviction under Count I. His major claim is that reliance was placed entirely upon Jewel's testimony, and he claims that she is an unreliable witness.

■ The credibility of the witness is a question to be determined by the jury. *United States v. White,* 451 F.2d 351 (8th Cir. 1971); *United States v. May,* 419 F.2d 553 (8th Cir. 1969). This court must view the evidence, and inferences to be drawn therefrom, in the light most favorable to the government. *United States v. Fryer,* 419 F.2d 1346, 1349 (8th Cir. 1969); *Moore v. United States,* 375 F.2d 877, 879–80 (8th Cir. 1967). If the jury believed the government's witnesses, and disbelieved those of the defendants, there was clearly sufficient evidence to convict. The defendant's counsel, through questioning of Jewel and her mother, inferred that, either Jewel had inflicted the wounds herself, or that her mother had stabbed her. The jury apparently believed Jewel's testimony that Paul inflicted the wounds. We find sufficient evidence to support the judgments of conviction for both defendants on Count I for assault with a dangerous weapon.

*Count III.*

The defendants were charged and convicted with having violated 18 U.S.C. § 1503.[2] Rather than indicting the defendants in the language of the statute, the government charged, under Count III:

On or about the 23d day of November, 1975, in the District of South Dakota, Eugenio Good Shield, a/k/a Joe Good Shield and Cordell Good Shield, a/k/a Paul Good Shield, corruptly did endeavor to influence, obstruct and impede the due administration of justice in the United States District Court for the District of South Dakota, in that said Eugenio Good Shield, a/k/a Joe Good Shield and Cordell Good Shield, a/k/a Paul Good Shield, knowing that one Jewel McCaig was to appear before the District Court hearing the Habeas Corpus Petition of Henry Thomas Good Shield urged and advised, by threats or force, Jewel McCaig *to give false testimony before said Court* in relation to the aforesaid Habeas Corpus Petition, in violation of 18 U.S.C. § 1503.

(Emphasis added).

The defendants urge on appeal that they were not trying to coerce Jewel to testify falsely. Rather they assert they were attempting, without threat or force, to have her tell the truth. Thus, they urge the record is barren of evidence that they, at any time, urged her "to give false testimony." Although we think the circumstances shown could allow a jury to infer otherwise, we choose to base our decision on another ground. The only proof necessary under § 1503 was that the defendants corruptly did endeavor to influence, obstruct and impede the due administration of justice in a United States District Court, by use of threats and force on a witness who was scheduled to testify. The evidence, which the jury was entitled to believe, was that the defendants caused injury to a prospective witness, in an attempt to influence her testimony in a federal court proceeding. The allegation as to the purpose for their coercion, i. e., "to give false testimony before said court" was surplusage under the statute.

As the Tenth Circuit stated:

Mere surplusage in an indictment may be disregarded and such disregard does not render the indictment invalid if sufficient remains to charge a crime. *Bary v. United States,* 292 F.2d 53 (10th Cir. 1961). It is not essential that everything in an indictment be proved. It is only necessary to prove so much thereof as establishes, *prima facie,* that there has been a violation of the statute involved. *Gambill v. United States,* 276 F.2d 180 (6th Cir. 1960).

*United States v. Archer,* 455 F.2d 193, 194 (10th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 135, 34 L.Ed.2d 100 (1972).

*See also Milentz v. United States,* 446 F.2d 111 (8th Cir. 1971).

In *Gawne v. United States,* 409 F.2d 1399, 1402 (9th Cir. 1969), the indictment charged the defendants with kidnapping and "knowingly transporting [their victim] in interstate commerce *'for the purpose of forcing the [victim] to assist them in their unlawful flight . . . to avoid prosecution for grand larceny.'* " The government sought to prove the recited purpose, and the court instructed the jury that it was an element of the offense, to be established beyond a reasonable doubt. The court held that "[s]ince appellants' purpose was not an element of the offense, this allegation of the indictment was surplusage and need not have been proved. The question is whether introduction of this issue into the case af-

---

**2.** 18 U.S.C. § 1503 reads, in part:

Whoever corruptly, or by threats or force . . . endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer . . . or corruptly or by threats or force . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

fected appellants' substantial rights." (Citations omitted). 409 F.2d at 1403.[3]

 We agree with the standard set forth by the Ninth Circuit under those circumstances. The determining factor is whether, on the whole record, it appeared that this circumstance (the issue of the truth or falsity of Jewel's testimony) interfered with the proper consideration of the real issues. The record reveals no prejudice to the defense by the submission of this additional issue to the jury. It simply added unnecessarily to the government's burden of proof.[4] Thus, we hold, assuming, *arguendo,* that the record is barren of evidence to support the charge that the defendants did attempt to get Jewel to testify *falsely,* that the conviction must still be sustained, since that allegation is surplusage and not a necessary element of proof under the statute.

The judgment on Count I and Count III is affirmed as to both defendants. The cause is remanded to the trial court to vacate the suspended sentence and conviction under Count II as to both defendants.

---

3. We note here, as did the court in *Gawne v. United States,* 409 F.2d 1399, 1403 n. 6 (9th Cir. 1969), that the defendants did not object to the instruction submitting the issue of purpose to the jury.

4. There is no indication on the record that either defendant based his entire defense on the fact that he was attempting to get Jewel to "tell the truth" rather than to testify falsely. Both defense counsel cross-examined Jewel extensively as to her past testimony on the issue of Steven Wright's murder, apparently in an effort to establish whether the defendants were attempting to force her to give perjured testimony. As defense counsel urged on the court, "Obviously, our defense was 'we didn't do it, neither one of the boys didn't (sic) do it.'"