UNITED STATES of America, Appellee,

v.

Charles KIBBY, Appellant.

No. 87–2096WM.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1988.

Decided June 9, 1988.

Rehearing Denied July 19, 1988.

---

Kenneth I. Grissinger, Kansas City, Mo., for appellant.

John R. Osgood, Kansas City, Mo., for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Charles S. Kibby appeals from the District Court's[1] judgment entered on a jury verdict convicting him of engaging in a conspiracy to defraud and of transporting unlawfully obtained money in interstate commerce in violation of 18 U.S.C. §§ 2314, 371, and 2. For reversal Kibby alleges: 1) that the evidence was insufficient to support his convictions; and 2) that the trial court erred by giving instructions which allowed the jury to convict Kibby without finding that he benefited from the conspiracy, and in the absence of a common illegal design or purpose. We affirm.

### Facts

The basic facts in this case are as follow. Kibby was the owner of a Missouri company which produced "laser" paper. Kibby sold a substantial volume of this paper to Support Resources, Inc. (S.R.I.), another Missouri company, for $14.25 per thousand sheets. Kibby sold this paper to S.R.I. through a Mr. Richard Stucky. Stucky was the vice president and the chief operating officer of S.R.I.

Unbeknownst to the corporate officials of S.R.I. and of its parent company, Kibby and Stucky had an arrangement whereby Kibby paid Stucky $2.00 for every thousand sheets of laser paper which he was able to sell to S.R.I. Stucky and Kibby had jointly set the selling price to S.R.I. at $14.25 with the explicit purpose of allowing Kibby to receive $12.25 for every thousand sheets sold and for Stucky to receive $2.00.

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

At trial, the government argued to the jury that this arrangement was an illegal "kickback scheme", while Kibby argued that he did not know Stucky was employed by S.R.I. and instead believed that he was simply paying Stucky a commission for landing him the S.R.I. account.

The mechanics of the $2.00 payments consisted of Kibby issuing a check each month to Systems Design Services Inc., a Kansas company formed by Stucky and with the same address as the home address of Stucky. The amount of each check was tied to the amount of paper delivered during the month to S.R.I. These checks were always personally picked up by Stucky with 80% of them being deposited by Stucky into his account in a bank in Kansas.

### Discussion

The first allegation of Kibby's which this Court will address is that the trial judge erred by giving instructions which 1) allowed the jury to find a conspiracy in the absence of a common illegal design or purpose, and 2) which allowed the jury to convict Kibby without finding that he benefited from the kickback scheme. We find both of these arguments to be without merit.

■ The first argument is without merit because the instructions did not allow a conviction for conspiracy in the absence of a common illegal design or purpose. Instead, Instruction No. S set forth the elements of conspiracy as including the requirement that "the conspiracy described in the Indictment was intentionally formed" and that "the accused knowingly and intentionally became a member of the conspiracy". Instruction No. U further informed the jury that a "conspiracy is a combination of two or more persons, by concerted action, to accomplish some unlawful purpose." Perhaps most importantly, Instruction No. J instructed the jury that:

defendant Kibby is not guilty of the offenses charged if he believed that his company's payment to Stucky's company were either (1) commissions to a broker for work for which Stucky was not employed by the buyer of laser paper or (2) payments for the benefit of Stucky that were known to or approved by the buyer of the paper.

Finally, Instruction No. H required the jury, in order to find Kibby guilty of the ten counts related to the interstate transportation of the checks, to find that "the checks were 'taken by fraud' in that they were acquired as a product of a kickback agreement" and that "defendant Kibby participated in the kickback agreement, knowing that the agreement was fraudulent." Accordingly, as the jury was properly instructed on this issue, and as we find that there was sufficient evidence for the jury to make these findings, appellant's argument on this issue fails.

■ The second argument is without merit because it was unnecessary for the jury to find that Kibby benefited from the scheme in order to convict him. Appellant appears to rest the argument that such a finding is required on the case *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). This reliance is misplaced. The question presented in *McNally* was whether the prohibition against using the United States mail to carry out "schemes to defraud" was restricted to fraudulent schemes to deprive others of money or property, or whether it also included fraudulent schemes to deprive individuals of other rights to which they are entitled. Id. 107 S.Ct. at 2881–2882. Indeed, there is absolutely no suggestion in *McNally* or in its logic that a conviction of a scheme to defraud requires a finding that the defendant benefited from the scheme. Accordingly, as the statute at issue and its related caselaw evidences no such requirement this Court finds Kibby's allegations on this point to be frivolous.

We will now address Kibby's allegation that the evidence at trial was insufficient to support his conviction. This argument also has two different prongs. The first is that there was insufficient evidence that he transported or caused money to be transported from one state to another, and the second is that there was insufficient evidence to support his conviction with regard

to checks written to Stucky which were signed by his wife rather than himself. These arguments are also without merit.

■ The thrust of the challenge regarding the interstate transportation of stolen money is that the trial court erred by not requiring the jury to find that Kibby knew that the checks he issued to Stucky's company would be transported from Missouri to Kansas. The failure with the challenge is that no such finding is required. For, as the Eighth Circuit held in *United States v. Ludwig:*

> the requirement of interstate transportation under § 2314 was intended merely to supply a constitutional basis for the exercise of federal power. As aptly pointed out by the Ninth Circuit in *United States v. Roselli* [432 F.2d 879 (1970)] ... 'section 2314 is aimed at the evils of theft, fraud, and counterfeiting and not at the regulation of interstate transportation.... The sole reason for conditioning the statute's prohibition upon use of interstate commerce is to provide a constitutional basis for the exercise of federal power.' Since interstate transportation is merely the linchpin for federal jurisdiction and bears no relationship, in terms of culpability, to the underlying criminal acts which are the objects of § 2314, it follows that the government should not have to prove that the interstate transport was in any way reasonably foreseeable.

523 F.2d 705, 707 (8th Cir.1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed. 2d 86 (1976).

Appellant's assertion that this Court should ignore *Ludwig* and follow the Fifth Circuit's holding in *United States v. Greer,* 467 F.2d 1064 (5th Cir.1972), is unconvincing. This case simply does not come close to having the type of attenuated relationship between the defendant's actions and the eventual transportation in interstate commerce which was present in *Greer.* *See generally,* 467 F.2d at 1069–1071.

■ Finally, we come to appellant's suggestion that there was insufficient evidence to convict him with regards to checks written to Stucky and signed by his wife be-

cause, Kibby argues, there was no requisite showing that he caused these checks to be issued. We disagree. The jury found that he did cause them to be issued and the jury had sufficient evidence before it to make this finding. Kibby owned and operated the business that issued the checks. He was, according to the jury, a knowing participant in the kickback scheme. Finally, all of the checks relevant to this challenge were tied to a corresponding delivery of paper to S.R.I. under the kickback scheme.

Accordingly, we affirm appellant's convictions.