**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Harve GIRDNER,**
**Defendant-Appellant.**

**No. 84–2469.**

United States Court of Appeals,
Tenth Circuit.

Sept. 11, 1985.

258

Harry Scoufos, Sallisaw, Okla., for defendant-appellant.

Christopher G. Caldwell, Trial Atty., Criminal Div., U.S. Dept. of Justice, Washington, D.C. (Stephen S. Trott, Asst. Atty. Gen., and William S. Lynch, Senior Counsel for Litigation, Criminal Div., U.S. Dept. of Justice, Washington, D.C., with him on brief) for plaintiff-appellee.

Before MOORE, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellant-defendant, John Harve Girdner, was charged in a three-count indictment with making false statements to the court in violation of 18 U.S.C. § 1623. He was found guilty by a jury on all three counts and duly sentenced by the court. He now appeals. We affirm.

The case arose out of the investigation into, and prosecution for, absentee ballot fraud in Oklahoma. The defendants were Dan Draper, Jr., Speaker of the House of Representatives, and Joe Fitzgibbon, majority leader of the House of Representatives. Appellant-defendant, John Girdner, testified as a government witness in the trial. Both men were found guilty and sentenced to three-year terms. On February 3, 1984, Draper and Fitzgibbon filed a motion for new trial alleging newly-discovered evidence. Appellant testified on February 16, 1984, as a defense witness, on the motion and recanted various aspects of his testimony given at the trial. Tr.Vol. III, pp. 228–31. He also claimed that he had

been told by government prosecutors to testify to certain matters which were untrue. Id. The motion for new trial was granted.

A cooperation agreement was reached between the Girdner family and the United States Attorney's Office in which the Girdners agreed to cooperate with the government's investigation and resulting trials. Barney Girdner agreed to plead guilty to one felony count in exchange for the government foregoing any prosecution of other family members including his son, John Harve Girdner, the present appellant-defendant. Id. pp. 111–12. Barney Girdner did plead guilty and was sentenced to a term of five years on his plea. Id. p. 127.

Appellant was indicted on three counts of giving materially inconsistent testimony under oath in violation of 18 U.S.C. § 1623. The indictment charged that appellant's testimony of February 16, 1984, was irreconcilably inconsistent with his previous testimony given on August 12, 1983, in the trial of Draper and Fitzgibbon. After a jury trial, appellant was found guilty on all three counts and was sentenced to a term of five years on each count, the sentences to run concurrently.

■ The first argument is that the use of testimony from the Draper-Fitzgibbon trial in the prosecution for giving inconsistent testimony violates his Fifth Amendment rights. He does not claim that in the Draper-Fitzgibbon trial he claimed any Fifth Amendment rights. Accordingly, the argument is without merit.

■ The next argument is that the use of the testimony from the Draper-Fitzgibbon trial violated 18 U.S.C. § 6002. That section provides that whenever a witness refuses to testify on the basis of his privilege against self-incrimination in a proceeding before a federal district court and the court issues an order compelling testimony, the witness may not refuse to testify on the basis of self-incrimination. No testimony compelled under the order may be used against the witness in any criminal case, except for prosecution for perjury, giving false statement, or otherwise failing to comply with the order.

The fundamental flaw in appellant's argument is that he entered into an informal agreement with the prosecution to provide truthful testimony in exchange for immunity from prosecution as a result of his substantive testimony. Id. pp. 246–47. Appellant's testimony was not compelled by court order as required by § 6002. We have recently had before us a similar informal agreement involving a witness in the Draper-Fitzgibbon trial. We found in *United States v. Hembree*, 10 Cir., 754 F.2d 314, 317, that it is "simply a contract." The agreement was void when appellant recanted his previous trial testimony at the hearing of the Draper-Fitzgibbon motion for a new trial. Tr.Vol. III, pp. 246–47. Because a court order under § 6002 was neither requested nor obtained, appellant's claim under § 6002 must fail.

■ Appellant contends that the court erred in denying his motion to dismiss the indictment on the ground that the allegedly inconsistent statements made by him were not material. R. pp. 52–71. Section 1623(a), Title 18 U.S.C., makes it a crime for a person "under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly [to] mak[e] any false material declaration ..." Materiality is a question for the court to decide. *United States v. Goguen*, 1 Cir., 723 F.2d 1012, 1016, n. 4; and *United States v. Martellano*, 7 Cir., 675 F.2d 940, 942. See also *United States v. Masters*, 10 Cir., 484 F.2d 1251, 1254 (prosecution for perjury under § 1621). "The test of materiality is 'whether the false statement has a natural tendency to influence, or was capable of influencing, the decision ... required to be made.'" *United States v. Moore*, D.C.Cir., 613 F.2d 1029, 1038, cert. denied 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811. See *Masters*, supra, 484 F.2d at 1254, "for testimony to be material it must be capable of influencing the tribunal on the issue before it."

■ Count I of the indictment concerns whether appellant was asked to lie by any

government prosecutor or agent at the Draper-Fitzgibbon trial. R. pp. 3–5. At that trial he was asked whether anyone in the United States Attorney's Office or the postal inspector's office asked him to lie. He answered negatively. Tr.Vol. III, p. 228. At the hearing on the motion for new trial, he testified that a government prosecutor told him to testify falsely to certain matters. Id. pp. 230–31. The inconsistent testimony was capable of influencing both the jury at the Draper-Fritzgibbon trial and the court in reviewing the motion for new trial.

Counts II and III concerned testimony given by appellant at the Draper-Fitzgibbon trial as to two conversations he had overheard involving his father. Count II concerns whether appellant overheard a conversation between Draper, Fitzgibbon and his father in which his father was asked if he could get as many absentee ballots for the runoff election as he had gotten in the primary election. R. pp. 5–7; Tr.Vol. III, p. 124. At the Draper-Fitzgibbon trial appellant testified that he had overheard such conversation. Tr.Vol. III, pp. 226–28. At the motion for new trial he testified that his earlier testimony was false. Id. pp. 228–29.

The testimony on Count III concerned a conversation in which the mailing of the ballots was discussed. R. 7–9. At the Draper-Fitzgibbon trial appellant testified that there was a discussion between his father and Draper about when the ballots should be mailed because the ballots might be challenged. Tr.Vol. III, pp. 227–28. At the motion for a new trial, appellant testified that his previous testimony was false to the extent that there had not been a discussion about the ballots being challenged. Id. p. 229. His testimony at the Draper-Fitzgibbon trial showed guilty knowledge of Draper and Fitzgibbon that the ballots were fraudulent and was capable of influencing the jury. His testimony at the hearing on the motion for a new trial was capable of influencing the trial court that appellant and his family had given false testimony at the Draper-Fitzgibbon trial. Id. p. 127. The trial court did not err in holding that appellant's statements as charged in Counts I, II and III were material.

■ Appellant contends that the court erred in allowing the prosecutor to inquire on cross-examination as to appellant's involvement in the ballot fraud scheme. The inquiries were whether (1) appellant convinced six persons who were not eligible to vote in his father's district to complete voter registration forms containing false information, (2) appellant stole some voter registration forms from his cousin, (3) appellant falsely represented to the voter registrar that four persons whom he found in a city park in Stillwell, Oklahoma, were persons named in the registration forms, (4) appellant told some of the falsely registered voters to tell certain lies if they were questioned, and (5) appellant forged signatures on absentee ballots. Id. pp. 275–82. Appellant admitted that he developed this scheme to help his father get elected. Id. p. 283. The court allowed this cross-examination under Fed.R.Evid. 608(b). Id. pp. 271, 274.

Rule 608(b) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness...."

Appellant claimed on direct examination that the only reason he had testified untruthfully at the Draper-Fitzgibbon trial was because the government told him to and indirectly threatened to indict him and other members of his family if he failed to testify to those matters. Tr.Vol. III, pp. 254, 258, 264–65, 267–69. He insisted at his trial that the jury should now believe him because he no longer had immunity and the government was no longer threatening him. Id. p. 269.

Under Rule 608(b) inquiry, cross-examination into the prior conduct of a witness concerning his character for truthfulness is within the discretion of the trial court subject to Fed.R.Evid. 403. *United States v. Atwell*, 10 Cir., 766 F.2d 416, 420. Appellant placed his credibility at issue when he took the stand. The court did not abuse its discretion in allowing cross-examination of appellant's previous falsehoods and deceitful actions in the ballot fraud scheme as being probative of appellant's truthfulness. *United States v. Reid*, 9 Cir., 634 F.2d 469, 473–74, cert. denied 454 U.S. 829, 102 S.Ct. 123, 70 L.Ed.2d 105.

Appellant contends that the court erred in refusing his requested voir dire of the jury concerning pretrial publicity. If this point is properly before us, we find no merit in it. The court's voir dire of the jury on this issue was more extensive than that requested by appellant. R. 49; Tr. Vol. III, pp. 33–35.

Affirmed.