**UNITED STATES of America, Plaintiff,**

**v.**

**Valerie L. SCHULER, Defendant.**

**No. 04–CR–205–B.**

United States District Court, D. Wyoming.

June 16, 2005.

Michael J Krampner, Krampner Fuller & Hambrick, Casper, WY, Christopher M Eippert, Kohler & Hart, for Plaintiffs.

## ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL AND DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

BRIMMER, District Judge.

This matter is before the Court upon Defendant's Motion for New Trial and Defendant's Motion for Judgment of Acquittal. After considering the Defendant's motions, having reviewed the materials on file, having heard oral argument, and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

## I. BACKGROUND

On March 17, 2005, following a seven day trial, a duly empaneled jury found Valerie Schuler guilty, beyond a reasonable doubt, of twenty-four (24) counts of mail fraud and eleven (11) counts of money laundering. The jury also made specific findings on the special verdict form regarding facts that may affect sentencing. Specifically, the jury found, beyond a reasonable doubt, that (1) the total loss in this case was more than $400,000; (2) the total number of victims was 250 or more; and (3) Valerie Schuler did relocate, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials.

Defendant Schuler now moves the Court for a judgment of acquittal or in the alternative a new trial. Defendant Schuler contends that there was insufficient proof to find her guilty on several of the mail fraud counts as well as the sentencing findings. Defendant also avers that her trial was unfair "by virtue of inadmissible, possibly unreliable, and clearly misleading character evidence improperly presented by the prosecution." Def.'s Mot. for New Trial at 2. Defendant also claims that the sentencing enhancements included on the special verdict form were unduly prejudicial.

## II. LEGAL STANDARDS

In reviewing a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, a court "must view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. White,* 673 F.2d 299, 301–02 (10th Cir. 1982) (citations omitted). A reviewing court is allowed "to enter a judgment of acquittal only if the evidence is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* at 301. "This standard reflects a deep respect for the fact-finding function of the jury." *United States v. Frazier,* 53 F.3d 1105, 1115 (10th Cir.1995) (citation omitted).

In considering a motion for new trial pursuant to Federal Rule of Criminal Procedure 33, the trial court has broad discretion and its decision will not be disturbed on appeal absent abuse of that discretion. *United States v. Quintanilla,* 193 F.3d 1139, 1146 (10th Cir.1999), *cert. denied,* 529 U.S. 1029, 120 S.Ct. 1442, 146 L.Ed.2d 330 (2000); *United States v. Schwab,* 61 F.Supp.2d 1196, 1199 (D.Wyo.1999) (Johnson, J.). A trial court can grant a new

trial "if required in the interest of justice" or for any error which would require reversal on appeal. Fed.R.Crim.P. 33; *Schwab,* 61 F.Supp.2d at 1199; 3 Charles A. Wright, Nancy J. King & Susan R. Klein, *Federal Practice and Procedure: Criminal* § 556 (3rd ed.2004). However, "[a] motion for a new trial is not regarded with favor and should only be granted with great caution." *United States v. Sinclair,* 109 F.3d 1527, 1531 (10th Cir.1997).

## III. DISCUSSION

### A. Motion for Judgment of Acquittal

Defendant Schuler argues that a judgment of acquittal should be granted because the overall evidence was insufficient to convict her of the crimes of mail fraud and money laundering. Alternatively, and in the event that the Court finds that the overall evidence was compelling, Defendant Schuler avers that there is insufficient evidence to support ten of the individual counts of mail fraud. Defendant Schuler also contends that there was insubstantial evidence for the jury to make the sentencing findings, as referenced above.

Defendant's motion lacks merit as the record is replete with evidence upon which a jury could have found Defendant guilty of each and every count alleged in the indictment. The prosecution also presented ample evidence to allow the jury to make factual findings in regards to the sentencing allegations.

Some of the evidence that supports the jury's findings include (1) Defendant's own words, as written in her journals, where she talks about misleading people and trying to throw the authorities off her scent; (2) Defendant's dealings with the Wisconsin Department of Justice; (3) Defendant's decision to move her business to Wyoming; (4) Defendant's lack of affiliation with Visa or Mastercard; (5) outdated names and addresses on the letter provided to those

individuals that sent her money; and (6) the guaranteed approval stated in the letters and advertisements.

Therefore, as just shown, the evidence tending to prove Defendant's guilt and the corresponding sentencing factors was much more than "meager" and certainly was not "nonexistent." Consequently, a judgment of acquittal cannot be granted. *See White,* 673 F.2d at 301. As a result, Defendant's Motion for Judgment of Acquittal must be and hereby is **DENIED.**

### B. Motion for New Trial

In her motion for a new trial, Defendant Schuler asserts that her trial was unfair because inadmissible and improper evidence was presented to the jury. Specifically, Defendant argues (1) that the sentencing allegations regarding the number of victims involved and the total take of the criminal enterprise was improperly admitted as character evidence under 404(b); (2) that the government improperly presented "prior bad act" evidence; (3) that Defendant Schuler was denied the opportunity to confront her accusers; and (4) that Defendant Schuler was denied due process of law. Def.'s Mot. for New Trial at 4–20. Each argument will be addressed separately below.

#### 1. Sentencing Allegations

■ In her first argument, Defendant argues that the sentencing factors included on the Superceding Indictment and the Verdict, as well as the proof of the factors during trial, were prejudicial and constituted impermissible character evidence. Furthermore, Defendant contends that the holding in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), mandates that sentencing factors not be included on the indictment and not be proven to the jury.

The Court disagrees. First of all, the sentencing factors were not introduced or used as character evidence under Federal Rule of Evidence 404(b).[1] The government did not introduce the sentencing factors to prove Defendant's character. Rather, the sentencing factors were introduced to the jury so that they could answer, beyond a reasonable doubt, the questions posed to them by the Court in the sentencing factors portion of the Verdict.

Second, nowhere in the *Booker* decision does it state that sentencing factors cannot be pleaded and proven to the jury. In fact, the *Booker* Court explicitly stated just the opposite. As the Tenth Circuit stated, "In *Booker*, the Court extended the logic of *Blakely* to the Federal Sentencing Guidelines, holding that the Sixth Amendment requires that '[a]ny fact (other than a prior conviction) ... necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir.2005) (quoting *Booker*, 125 S.Ct. at 756).

However, as is now well-known, the *Booker* Court also made it constitutional for judges to establish the sentencing factors by a preponderance of the evidence. *Booker*, 125 S.Ct. at 756–64. This was accomplished by removing those parts of the Sentencing Reform Act which made the Guidelines mandatory. *Id.* at 756–57. According to Defendant, this ruling mandates that judges, and judges only, decide the sentencing factors. Defendant, however, misreads *Booker* and attempts to stretch the holding to an illogical conclusion.

■ This Court is of the opinion that it is up to the District Court's discretion as how to establish the factual basis for the sentencing factors. Thus, a District Court may either allow the jury to find sentencing factors beyond a reasonable doubt or under *Booker* and the new sentencing regime, a District Court may also, within the bounds of the Constitution, find the sentencing factors by a preponderance of the evidence on its own accord.

## 2. Prior Bad Acts

■ Defendant contends that certain evidence presented by the prosecution was admitted into evidence in violation of Federal Rule of Evidence 404(b). Specifically, Defendant cites the evidence regarding her alleged use of another individual's social security number to obtain credit and her falsified mortgage application.

However, as the government astutely points outs, this evidence was not introduced for the purpose of proving action in conformity with prior bad acts. Rather, it was produced for the purpose of impeaching Defendant's credibility. All of the questions posed to Defendant regarded previous acts having a direct bearing on her propensity to tell the truth. Thus, the questions and their answers were properly admitted under Federal Rule of Evidence 608(b), which allows counsel to question a witness on cross-examination about specif-

---

1. Federal Rule of Evidence 404(b) provides:
   **(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. F.R.E. 404(b).

ic instances of conduct which tend to discredit the witness' testimony. F.R.E. 608(b).[2] *See also United States v. Atwell,* 766 F.2d 416, 420 (10th Cir.1985) ("The trial court in its discretion may allow inquiry into the prior conduct of a witness concerning his character for truthfulness.").

It is worth noting that a defendant who wishes to testify is not immune from attacks on her credibility. Once a defendant takes the stand her credibility is at issue the same as any other witness. *See United States v. Girdner,* 773 F.2d 257, 261 (10th Cir.1985) (noting that trial court "did not abuse its discretion in allowing cross-examination of appellant's previous falsehoods and deceitful actions . . .").

### 3. Confrontation Clause

■ The Confrontation Clause guarantees to all criminal defendants "[t]he right physically to face those who testify against him . . . and the right to conduct cross-examination." *United States v. Sunrhodes,* 831 F.2d 1537, 1543 (10th Cir.1987) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). As noted by the Tenth Circuit, the right of confrontation serves several important functions:

> Confrontation (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for

the discovery of truth;" and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* (citing *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

In this case, Defendant contends that she was denied the opportunity to confront her accusers on three separate occasions during the trial: once when Kathryn McKee testified, once when Jeannette Owens testified, and once when the summary exhibit was introduced into evidence. Each instance will be discussed below.

■ Kathryn McKee was the prosecution's sole rebuttal witness. She was called to testify via the telephone and was sworn to honesty as are all other witnesses. Her testimony was quite short and simply concerned the numerical digits contained in her social security number. The prosecution apparently introduced this evidence to impeach Defendant's credibility because she had previously used a number matching McKee's social security number to obtain credit, a fact which was elicited from Defendant on cross-examination.

Defendant contends that McKee's testimony violates the Confrontation Clause because McKee was not present in the court room during her testimony. On its face, this argument seems quite strong. However, upon closer inspection it is clear

---

**2.** Federal Rule of Evidence 608(b) provides:

> **(b) Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness

or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

F.R.E. 608(b).

that the functions of confrontation would not have been served any better had McKee been present in the court room. For example, McKee took her oath via the telephone, was available for cross-examination, and her testimony was uncontroverted and subject to absolute proof. Since her testimony was uncontradicted and subject to absolute proof, there was no need for the jury to assess her credibility. Thus, face to face confrontation was not needed in this instance. Furthermore, even if it were error to allow McKee to testify by telephone, such error was harmless because of the reasons just stated, *to wit,* her testimony was uncontradicted and subject to absolute proof. *See United States v. Toles,* 297 F.3d 959, 967–68 (10th Cir.2002) (noting that Confrontation Clause errors are subject to harmless error analysis).

Jeannette Owens was called by the prosecution to prove the allegations of Count 16 of the Superceding Indictment. Defendant contends that such testimony violated the Confrontation Clause because Count 16 was a mail fraud count listing Gary Owens, Mrs. Owens' husband, as the alleged victim. Mrs. Owens was not listed as a victim in Count 16.

■  This Court finds Defendant's argument on this point unpersuasive. After an extensive scouring of this nation's case law, the Court was unable to find a single opinion which substantiated Defendant's legal argument regarding Mrs. Owens's testimony. This is most likely due to the fact that the prosecution is not required under the Confrontation Clause to call the victim of a crime to prove its allegations. Rather, the prosecution is only required to submit evidence which proves the defendant's guilt beyond a reasonable doubt. This evidence may come in any form so long is it meets the requirements of the Federal Rules of Evidence. A simple example shows the weakness of Defendant's

argument. Suppose an individual is indicted for first degree murder and, obviously, the victim is no longer available to testify. Does this mean that the defendant cannot be convicted due to the Sixth Amendment? According to Defendant's argument, it does. But, of course, common sense tells us otherwise. Consequently, Mrs. Owens' testimony in regards to Count 16 does not violate the Confrontation Clause.

■  Defendant's final confrontation argument concerns a summary exhibit introduced by the government to prove that Defendant had devised a scheme and artifice to defraud. The summary exhibit was based upon thousands of pages of documents that had been compiled by the government in the course of its criminal investigation. Essentially, the summary exhibit set forth each person that Defendant Schuler had completed a transaction with, the amount of the transaction, and the date of each transaction. Defendant complains that this summary exhibit constitutes a constitutional violation because each person on the exhibit was allowed to "testify" to the Court and jury without being submitted to cross-examination.

However, the Federal Rules of Evidence and the case law of this circuit clearly establish that introduction and acceptance into evidence of the summary exhibit was proper. For instance, Federal Rule of Evidence 1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

F.R.E. 1006. The evidence condensed by the summary exhibit clearly fits the crite-

ria of Rule 1006. Due to sheer volume, the records represented by the summary would not be conducive to convenient examination during trial. The trial may have lasted for months if every transaction had been introduced separately.

 The summary exhibit also meets the requirements of *United States v. Samaniego*, 187 F.3d 1222, 1223 (10th Cir. 1999). In *Samaniego*, the Tenth Circuit noted that "[t]he materials upon which the summary is based need not themselves be admitted into evidence." *Id.* (citation omitted). However, "the evidence upon which they are based, if not admitted, must be admissible." *Id.* (citing *Harris Mkt. Research v. Marshall Mktg. & Communications, Inc.*, 948 F.2d 1518, 1525 (10th Cir.1991)). In the case *sub judice*, the documents supporting the summary exhibit were not admitted into evidence. However, they surely would have been had they been offered. The documents summarized in the exhibit were valid business records and, although hearsay, would have qualified for a Federal Rule of Evidence 803(6) exception.

As support for her confrontation argument regarding the summary exhibit, Defendant cites the recent Supreme Court case of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the Supreme Court held that out-of-court testimonial statements must be excluded at trial unless the witness is unavailable and the Defendant had a prior opportunity to cross-examine the witness. *Id.* at 68, 124 S.Ct. 1354. However, that decision, by its own admission, does not apply to this Court's decision to admit the summary exhibit as the summary exhibit is not a testimonial out-of-court statement. *See id.* (noting that the *Crawford* decision only applies to testimonial hearsay and admission of nontestimonial hearsay can constitutionally depend on the rules of evidence).

### 4. Due Process of Law

In her final argument, Defendant contends that she was denied due process of law, on various grounds, throughout the trial. She argues that indictment variances, prior bad act evidence, and cumulative error all lead to a due process error of constitutional proportions.

After careful review, the Court **FINDS** that each contention lacks merit. Furthermore, even if the Court were to find a constitutional error present in the record, the Court is confident that such error would be harmless.

## IV. CONCLUSION

For the aforementioned reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for New Trial is **DENIED. IT IS FURTHER ORDERED** that Defendant's Motion for Judgment of Acquittal is **DENIED.**